IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| JEROME KINDLE, | )  No. 03-CR-30020 |
| | ) |
| Defendant. | ) |

**DEFENDANT'S COMMENTARY ON SENTENCING FACTORS**

**NOW COMES** Defendant, Jerome Kindle, by and through his attorneys, Noll Law Office by Jon Gray Noll and Timoney and Page by Jeff Page, and for his Commentary on Sentencing Factors, submits the following objections, addendums, comments and briefs pursuant to *Local Rule 32.1*: "Implementation of Sentencing Guidelines", to the Court:

1. Prefatory Comments – The Defendant's objections, addendums and comments to the Presentence Investigation Report apply to the Presentence Investigation Report dated July 19, 2004 and the Defendant's objections thereto dated May 13, 2005.

On April 30, 2004, the Defendant entered a plea of guilty to Counts 6 and 8 as charged in the Indictment, pursuant to a written Plea Agreement.

Under prevailing case law, the Defendant acknowledges his requirement to produce evidence when challenging the accuracy and completeness of the Presentence Investigation Report.

In the Presentence Investigation Report dated July 19, 2004, the Defendant sets forth his unresolved objections to the Presentence Report, which

objections are incorporated by reference herein and can be summarized as follows:

## I.  Convictions Used to Determine Defendant Under Career Offender Status (Paragraphs 62 and 66)

In Paragraph 57 of the Presentence Investigation, the Probation Office has recommended that the Court determine the Defendant to be a career offender under Section 4B1.1.

The Defendant contests that determination by the Probation Office as a career offender. He specifically addresses the underlying circumstances of the convictions as set forth in Paragraphs 62 and 66.

By way of proffer, the Defendant submits the following comments as to each incident which resulted in the conviction:

**A.  Involuntary manslaughter (Paragraph 62)** – On February 14, 1990, Jerome Kindle, Derrick Foulks, Bobby Johnson and Jacinda Osbourne were walking down a Cape Girardeau street. The group was minding its busy when it was confronted by a man who started talking about the problems he had had with "niggers" the night before and didn't' get a chance to finish it. This individual was Robert McGee.

McGee brandished a knife and attempted to injure Ms. Osbourne with it. At the time, she was seven months' pregnant. The Defendant realized Mr. McGee was intoxicated and in no way threatened him in order to make matters worse.

The Defendant merely inquired as to why Mr. McGee thought it was necessary to harm any of the young people, when they had not done anything to harm him previously.

McGee remained adamant and said nothing but profanity to the group, escalating his attacks and advances on Ms. Osbourne.

The Defendant interjected himself between Mr. McGee and Ms. Osbourne to protect her.  After several minutes expended during which the Defendant tried to reason with the man, Mr. Foulks found a stick and tried to run McGee off.  McGee would not yield and continued his belligerent histrionics.

The Defendant found a brick and threw it at Mr. McGee and missed, but McGee picked it up and threw it back at the Defendant.  This was followed by Derrick Foulks hitting McGee in the arm with a stick.  The Defendant then threw the brick and hit McGee in the head, causing him to fall down.

The Defendant didn't see the full nature of the wound.  When he approached the man, Mr. McGee was unconscious and snoring.  The youngsters ran off before McGee could recover to continue his attack.

Initially, the Defendant was charged with murder, but eventually the matter was resolved in a plea of guilty to involuntary manslaughter, as reflected in Paragraph 62.

**B.     Burglary – Second Degree (Paragraph 66) –** On May 13, 1996, the Defendant and the Holbrook's son were close friends.  The Defendant had visited the Holbrook home many times before.

On the day in question, the Holbrook's son took some compact discs from his own family home because he wanted to sell them. At all times, the home was accessed by the Defendant only at times that he entered with the Holbrook son.

During testimony in the case, the store manager said that three different people came to the store to sell the CD's. When he testified, he could not identify the Defendant as one of the individuals who had come to the store. This resulted in Count 2, stealing, being dismissed against the Defendant.

Subsequent to the pre-trial motions, the Defendant was advised by his attorney that if he took the second-degree burglary, it would be like going into the house without the mother's consent at that time. He was advised that such a plea would in no way affect him adversely.

The Defendant denied being involved in the criminal activity. However, he does concede that he pled guilty to it as a method to avoid potential criminal liability.

II.    **Conclusion** – Section 4B1.1 of the sentencing guidelines defines a career offender. The Probation Office has recommended to the Court that the manslaughter conviction and the second-degree burglary conviction, coupled with the instant offense, may constitute a necessary predicate of convictions for designation as a career offender.

The definition of "crime and violence" in Section 4B1.2(a)(2) is limited to conduct that presents a serious potential risk of physical injury to another person. This has been expanded to include force against person and property. However, offenses that do not involve a significant risk of physical injury do not qualify as crimes of violence.

Interestingly, in *United States v. Hernandez,* 309 F.3d 458 (7th Cir. 2002), the Court noted that while not all involuntary manslaughter convictions are necessarily crimes of violence, the Defendant grabbed the gun from the victim and the gun was later used to kill him.

Applying the facts to the applicable considerations and definitions under the guidelines, it is clear that the Court is allowed some leeway in determination of crimes of violence. By looking at the underlying facts, both the involuntary manslaughter and second-degree burglary cases, it is clear that these two offenses do not fall within the intended definition of crime of violence.

Given that conclusion, the Defendant does not meet the criteria to be determined as a career criminal.

A. **Relevant Conduct and Drug Type and Quantity:**

In the event the Court agrees with the Defendant that he is not a career offender, the Defendant specifically then would assert his rights under the Plea Agreement to contest issues on relevant conduct, including drug type and quantity, offense level adjustments and any other resulting offense levels. Given that consideration, the Defendant would contest virtually all of the relevant conduct (Paragraphs 7, 8, 9, 10, 13, 15, 16, 19, 20, 29, 34, 35, 36, 37 and 38) as unfounded and without sufficient factual basis to allow such conduct to be assessed against the Defendant.

Defendant contends that relevant conduct is grossly overstated by way of quantity. Claiming that a continuing transaction within the scope of "temporal proximity" does not exist in this instant. Thus the facts applicable do not meet the definition of relevant conduct under the guidelines and prevailing law.

## **FACTORS THAT WARRANT DEPARTURE**

The Defendant believes that he qualifies for downward departure for substantial assistance, pursuant to Section 5K1.1 of the sentencing guidelines. This matter has been discussed with the U.S. Attorney's office and await notification of that office as to what downward departure their office will recommend.

## **MITIGATING FACTOR**

The Defendant wishes to proffer below the reason he became involved in the illegal drug business, which was the source of the charges herein. In submitting this proffer, the Defendant recognizes that his statement does not constitute, in any way, an affirmative defense. Nor, does it in any way, impinge upon or withdraw his acceptance of responsibility for the offenses to which he has pled guilty.

The purpose of this proffer is really to advise the Court of the type of factors that impacted upon him and motivated him to deal in drugs.

His proffer follows:

Following a cruise vacation to the Bahamas in April, 2002, I was contacted by an individual of "Nasty". "Nasty" was and is a Chicago dope dealer.

Nasty contacted me, advising me that my brother, Anton Miller, was supposed to get him money owed to Nasty. According to Nasty, Anton told Nasty that Renee, the Defendant's mother, was sending Nasty $20,000.

Following the vacation, the Defendant traveled to Chicago and met with Nasty. Nasty informed the Defendant that Anton was avoiding Nasty. Further,

Nasty advised the Defendant that someone was going to get killed if Nasty did not get his money.

It was at that time that Nasty offered to the Defendant a proposition. The Defendant would sell dope for Nasty, whatever profit realized from such sales could be allocated to pay off his brother Anton's debt.

Nasty dispatched two associates, Amos and Six, to observe the Defendant in Springfield.

As the Defendant dealt in the dope, Nasty backed off his extortion efforts against Anton. However, as soon as the Defendant was locked up in the instant case, Nasty renewed his efforts to find Anton Miller in Cape Girardeau.

Subsequent thereto, Anton Miller was found shot to death. No individuals have ever been arrested for the offense.

The Defendant certainly believes that Nasty and his associates were directly behind the death of his brother, Anton Miller.

## **WITNESSES**

Defendant anticipates that his fiancée, Natalie Burwell, will testify at his upcoming sentencing hearing.

## **ADDITIONAL CONSIDERATIONS**

The Defendant would ask that:

    A.    He be given credit for time served.

    B.    This Commentary be sealed, and only made available to those individuals as are necessary to have access to it on appeal, or otherwise as the Court directs;

  C. If incarceration is ordered by this Court, the Court recommend that the Defendant be incarcerated at the federal correctional facility as close to Greenville, Illinois as possible, so that he may be close to his family.

  D. Defendant would also request that he be placed in a facility with a drug rehabilitation program being available to him; and

  E. Defendant incorporates by reference all letters written on behalf of Defendant, which were provided to the Probation Office to be given to the judge.

  F. All documents referred to in this Commentary be incorporated by reference as if more fully set forth herein.

  G. Defendant acknowledges the mandatory special assessment of $200.00.

## **CONCLUSION**

The final calculation as to the applicable guideline range will depend upon the Court's rulings on these various points set forth hereinabove.

Defendant, Jerome Kindle, respectfully requests this Honorable Court to sentence this Defendant to the minimum period of incarceration allowable under the United States Sentencing Guidelines, and for such other and further relief as this Court deems just and equitable.

          Respectfully submitted,

          **JEROME KINDLE,** Defendant

By:   /s Jon Gray Noll
      Jon Gray Noll 02060108
      Attorney for Defendant
      Noll Law Office
      802 South Second Street
      Springfield, IL 62704
      Telephone: (217) 544-8441
      Fax: (217) 544-8775
      E-mail: noll@noll-law.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**

**CERTIFICATE OF SERVICE**

I hereby certify that on May 31, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

    David Risley
    U. S. Attorney's Office
    318 South 6th Street
    Springfield, IL 62701

    Jeff Page
    Timoney & Page
    808 South 2nd Street
    Springfield, IL 62704

and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:

      /s Jon Gray Noll
      Jon Gray Noll 02060108
      Attorney for Defendant
      Noll Law Office
      802 South Second Street
      Springfield, IL 62704
      Telephone: (217) 544-8441
      Fax: (217) 544-8775
      E-mail: noll@noll-law.com